LEONORA STEVENS (now SULLIVAN) vs. ROLAND G. STEVENS.

Suffolk.    May 6, 1958. — June 3, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Divorce*, Custody of child, Modification of decree.  *Error*, Whether error harmful.

On the record, a decree of a Probate Court transferring the custody of a minor daughter of divorced parties from the father to the mother was justified by changed circumstances in that the child was living in temporary quarters to which she had been removed by the father from a suitable, established home where she had previously lived and that the mother, who had remarried, had become able to provide her with a good, settled home. [626–627]

A party to a proceeding in a Probate Court for change of the custody of a minor child of divorced parents was not harmed where the judge excluded the record of a previous like proceeding in the same case when offered by that party and yet took into consideration facts disclosed in the previous proceeding: that proceeding was available to the judge without being put in evidence. [628]

An agreement by one of divorced parents of a minor child that custody of the child should always be in the other parent could not control determination of the matter of custody for the best interests of the child by the divorce court. [628]

LIBEL FOR DIVORCE, filed in the Probate Court for the county of Suffolk on February 4, 1947.

A petition by the libellant for change of the custody of the parties' minor daughter was filed on December 6, 1956, and heard by *Wilson*, J.

*Joseph P. Graham*, (*Augustine P. Turnbull* with him,) for Roland G. Stevens.

*Allan R. Kingston*, for Leonora Stevens Sullivan.

WHITTEMORE, J.    There is no basis for reversing the decree of the Probate Court for Suffolk County here presented for review on the evidence and a report of material

facts. The decree, dated August 15, 1957, modified prior decrees for custody of two minor children of the divorced parents and for the first time awarded the custody of the daughter, aged eleven, to the child's mother, the libellant, and ordered the libellee to pay $15 a week toward the support of the daughter. See G. L. c. 208, § 28. The minor son, at all times after the divorce in 1948, had been in the mother's custody.

At an earlier stage in these proceedings we held (331 Mass. 760) that no error was shown in a decree dated June 16, 1953, refusing to take the custody of the daughter from the father and award it to the mother. At that time the child was living in a home in Marlborough, Massachusetts, in the charge of a registered nurse, a daughter of the household. The judge then found that the child was housed in healthful and pleasant surroundings, and that the libellant had remarried and was in the process of buying a home in the Roslindale section of Boston.

The evidence and findings before us on the renewed petition for custody show facts as stated in this and following paragraphs. In 1956 the libellee had returned from his military service in Germany, and taken the child to Colorado, without the knowledge of the mother or the court. The mother at that time had the right by court order to take her daughter on Sundays for seven hour periods and for two weeks in August of each year. The child was living in Colorado in an apartment in quarters supplied by the military authorities to personnel having dependents. The registered nurse had left Marlborough, gone to Colorado, taken up her abode in the apartment, found a job, and was taking care of the child except when the child was in school or on Saturdays. On Saturdays the child was in the father's care and sometimes went with him to his work as "sales superintendent." The child was doing well in school, and was healthy. The father's sojourn in Colorado was expected to end in February, 1958, and he planned to return to Massachusetts.

In 1957 the mother and her present husband, whom she

had married in 1952, were living in their home in Roslindale. The other members of the family were the fifteen year old son of the libellant and the libellee, and the fourteen year old son of the libellant's present husband. There was evidence that the daughter's visits to that home had been happy and that she got along well with the two boys. The judge could have found that, when the libellee took his daughter to Colorado, "she didn't want to leave, but she wanted to go with me more."

Manifestly there was a relevant change of circumstances (*Hinds* v. *Hinds*, 329 Mass. 190, 191) adequate to support a change in the order for custody. There was strong assurance of the mother's ability to offer a good home and the daughter was no longer in a settled home.

The report of material facts places some stress on the father's intent and conduct in removing the child from Massachusetts, and the contradiction in his testimony as to whether he was in fact then married to a woman whom the judge found to be his present wife. It is well settled that the welfare of the child is the controlling consideration and custody is not to be awarded or changed to discipline either party. *Hersey* v. *Hersey*, 271 Mass. 545, 555. See *Grandell* v. *Short*, 317 Mass. 605. But the father's conduct was not entirely unrelated to the question of the advisability of putting the child in the mother's settled home. In the new circumstances of the parents it was not an unreasonable conclusion that the daughter would be better off in the libellant's family. This is so on the evidence and without regard to the finding, apparently as a matter of inference, that "there is every indication that the libellee is himself living at the apartment." We apply the familiar rule which brings questions of fact as well as of law before us and requires us to decide the case according to our judgment with due weight to the finding of the trial judge which is not to be reversed unless plainly wrong. *Hersey* v. *Hersey*, 271 Mass. 545, 554. The opportunity which the judge had to observe and appraise both parents is particularly important in a case of this kind. *Breton* v. *Breton*, 332 Mass. 317,

318. It is necessary, of course, to scrutinize with care an order which moves a child from the security of an established home into the uncertainty of a new environment. *Hersey* v. *Hersey,* 271 Mass. 545. *Heard* v. *Heard,* 323 Mass. 357. *Grandell* v. *Short,* 317 Mass. 605. *Allen* v. *Allen,* 326 Mass. 214. This is not such a case.

The libellee offered the record of the case as it was when the 1953 appeal was taken. On objection the judge ruled that it was excluded. His report of material facts nevertheless appropriately (*Hinds* v. *Hinds,* 329 Mass. 190, 192) recites facts disclosed in the earlier proceeding. The libellee has not been harmed. The earlier proceedings were available to the judge without being put in evidence as they are to the court on the present appeal, and there is no basis for concluding that the libellee was prejudiced in being led by the ruling not to produce other relevant evidence outside the record.

The judge found that a paper signed by the libellant in 1948 purporting to agree that the daughter's custody should forever be in the father was executed "after intimidation." In any event it could not control the court's decision. G. L. c. 208, § 31.

We have considered all the points made by the libellee including the evidence as to the libellant's health from time to time, and find no error.

Costs and expenses of this appeal may be allowed the libellant or her counsel in the discretion of the Probate Court.

*Decree affirmed.*