THOMAS R. MASTERS *vs.* KATHRYN CRADDOCK
(and a companion case[1]).

Nantucket.    January 14, 1976. — July 7, 1976.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Divorce,* Custody of child, Separation agreement.

In a proceeding in a Probate Court by a mother seeking modification of a decree awarding custody of her children to her former husband, evidence supported the judge's conclusion that the best interests of the children would be served by awarding custody of them to their mother even though she had previously removed them to another State in violation of the terms of a divorce decree. [427-428]

A Probate Court has continuing jurisdiction over the custody of minor children of divorced parents which cannot be ousted by the terms of an agreement entered into between the parents at the time of their divorce. [428-429]

PETITION filed in the Probate Court for the county of Nantucket on January 30, 1975.

CIVIL ACTION commenced in the Probate Court for the county of Nantucket on March 26, 1975.

The cases were heard by *Knight,* J.

*William J. Clary* for Thomas R. Masters.

*William H. Shaevel* for Kathryn Craddock.

KEVILLE, J.    These companion cases are here on appeal from judgments entered in the Probate Court for the county of Nantucket. The cases were tried separately but were consolidated on appeal. The appellant in each case is Thomas Masters (Thomas) and the appellee, his former wife Kathryn Craddock (Kathryn). Kathryn was granted a decree nisi of divorce in the Probate Court for the County of Nantucket on November 16, 1972. She was

---

[1] Kathryn Craddock *vs.* Thomas R. Masters.

given custody of their three minor children under the terms of a separation agreement which were incorporated in the decree and which provided that she would not remove the children from Massachusetts for more than two weeks without first obtaining Thomas' consent. Thereafter, Thomas married Kathryn's niece. Kathryn, who was experiencing financial difficulties, moved to North Carolina with the children without having obtained Thomas' approval. There she married her present husband (Craddock) whom she had met on Nantucket and whose home was in North Carolina. The Craddocks have lived in North Carolina since that time.

After an ex parte hearing on January 29, 1974, on his petition based upon Kathryn's removal of the children from Massachusetts, the divorce decree was modified to give Thomas custody of the children. Relying upon that decree, Thomas, in July of that year, filed a petition for a writ of habeas corpus in the District Court of Beaufort County, North Carolina, to obtain custody of the children. Both parties were represented at a full hearing on the petition after which the judge granted custody of and support for the children to Kathryn and permitted Thomas visitation rights with the children in Massachusetts at specified times. Thomas filed a signed statement with the court in which, inter alia, he submitted "exclusively" to its jurisdiction on the question of custody of the children. He stated his intention to comply with the court's order, acknowledged that the children were being properly cared for by Kathryn and her husband, that it would be improper for him to remove the children from her custody, and that he would return them to their mother following their visit with him which commenced at that time. However, at the end of that visitation period, he refused to return the children to Kathryn in North Carolina. Since that time they have remained with him and his wife in Massachusetts.

One of the two cases now before us, a petition brought by Kathryn on January 30, 1975, in the Probate Court for the county of Nantucket, sought modification of the Janu-

ary 29, 1974, decree which gave custody of the children to Thomas. She sought to have custody restored to her and to obtain leave to remove the children to North Carolina. After a hearing, with both parties and the children[2] before the court, judgment was entered on July 1, 1975, granting Kathryn's petition. Thomas' appeal from that judgment is before us without a transcript of the evidence but with a statement of evidence and proceedings presumably formulated under Mass.R.A.P. 8 (c), 365 Mass. 850-851 (1974), along with findings by the judge and a ruling giving full faith and credit to the decree of the District Court of Beaufort County, North Carolina.

In the first place it is to be observed that the children are not to be penalized by the failure of either of their parents to adhere to the terms of a court decree, in this instance their removal to North Carolina by their mother (see G. L. c. 208, § 30) and the failure of their father to return them to North Carolina following their visit with him. See *Hersey* v. *Hersey,* 271 Mass. 545, 555 (1930); *Heard* v. *Heard,* 323 Mass. 357, 377 (1948); *Aufiero* v. *Aufiero,* 332 Mass. 149, 152, 153 (1955); *Stevens* v. *Stevens,* 337 Mass. 625, 627 (1958).

No purpose is served by recitation of the comprehensive subsidiary findings of the judge which support his conclusion that the best interests of the children would be served by awarding custody of them to their mother. The judge was correctly guided by the principle that the welfare of the children is the governing consideration. *Smith* v. *Smith,* 361 Mass. 855 (1972), and cases cited. Since his findings and conclusion largely parallel those of the North Carolina court, we do not find it necessary to decide whether the probate judge was required to give full faith and credit to the judgment of the North Carolina court which also awarded custody to Kathryn. See and compare *Kovacs* v. *Brewer,* 356 U. S. 604 (1958).

We turn to the subject matter of Thomas' appeal in the

[2] The judge interviewed each of the children in camera. See *Jenkins* v. *Jenkins,* 304 Mass. 248, 251-252 (1939).

second case. On March 26, 1975, Thomas countered Kathryn's petition for modification by filing a complaint in the same Probate Court. In this complaint he sought to enjoin her permanently from removing the children from this Commonwealth in violation of the agreement entered into at the time of their divorce (the terms of which, as heretofore stated, were incorporated in the decree nisi and gave custody of the children to her).

On July 31, 1975, after a hearing, judgment was entered denying and dismissing his complaint. The judge made findings of fact and "rulings" of law. Mass.R.Civ.P. 52(a), 365 Mass. 816-817 (1974). For the reason stated earlier in this opinion, we pass the question whether the judge was required to give full faith and credit, as he did here, to the judgment of the North Carolina court. The judge concluded in substance that his judgment of July 1, 1975, on Kathryn's petition for custody was decisive of the issues presented in this case (see *Stevens* v. *Stevens,* 337 Mass. at 628) and that the welfare of the children was not to be affected by the terms of the agreement on which Thomas relied. There was no error.

The short answer to Thomas' contentions is that the continuing jurisdiction of the Probate Court over the custody of minor children of divorced parents may not be ousted by the terms of an agreement entered into between the parents at the time of their divorce, and the court may, where the welfare of the children warrants it, alter their situation as contemplated by that agreement. G. L. c. 208, § 28, as amended through St. 1975, c. 661, § 1. See *Wilson* v. *Caswell,* 272 Mass. 297, 302 (1930); *Buchanan* v. *Buchanan,* 353 Mass. 351, 352 (1967); *Madden* v. *Madden,* 359 Mass. 356, 363, cert. den. 404 U. S. 854 (1971).

*Judgment affirmed.*